WHITE, Judge.
Appellant Nell Austin, defendant below, seeks reversal of a summary final decree *752 entered in a suit for declaratory relief adjudging that plaintiff George C. Harden, Jr. was the bona fide purchaser of a thoroughbred quarter horse named Lee’s Pride. The chancellor decreed that title to the horse was vested in the plaintiff free and clear of a $2,000.00 unrecorded claim of lien asserted by defendant Nell Austin. The chancellor further ordered that the plaintiff was entitled to possession of the certificate evidencing the registration of said horse.
There appears no conflict in the material facts emerging from the summary proceedings. The plaintiff purchased Lee’s Pride from J. C. Trice in December, I960, for $3,500.00. The plaintiff had previously searched the public records of Osceola County and found no record of any lien or other claim of interest with reference to said horse. The plaintiff also checked with the American Quarter Horse Association of Amarillo, Texas, to ascertain the registered ownership of Lee’s Pride and found the horse registered in the name of W. L. Lee. W. L. Lee was contacted by the plaintiff and confirmed the fact that he had sold the horse to J. C. Trice.
At the time of his sale to the plaintiff, J. C. Trice stated that he had temporarily misplaced the registration certificate but would promptly obtain it or a duplicate. The plaintiff knew that Trice had exercised continuous possession and control of Lee’s Pride for more than eighteen months. The horse had been announced as owned by J. C. Trice at various shows without any objection on the part of Nell Austin who was present on many of such occasions. In selling to the plaintiff Trice acknowledged absolute unencumbered ownership of Lee’s Pride. The sale was completed and Lee’s Pride was delivered to the plaintiff.
The plaintiff began to ride and exhibit Lee’s Pride in various horse shows in Florida and Georgia. In May, 1961, approximately five months after his purchase, the plaintiff discovered that Nell Austin was in possession of the registration certificate in consequence of a loan made by her to J. C. Trice. There was no public record of said loan or of any instrument given to secure it. Nell Austin refused to deliver the certificate to the plaintiff who thereupon sued to determine his title and right to possession of Lee’s Pride and the registration certificate. The plaintiff alleged that without the certificate he was unable to register the horse properly with the American Quarter Horse Association and that without such registration the horse was depreciated in value for exhibition and breeding purposes.
Nell Austin answered and alleged that in September, 1959, in order to secure payment of a $2,000.00 loan, J. C. Trice gave her the Lee’s Pride “transfer report” and bill of sale which Trice had received from W. L. Lee; that the transfer report, executed in blank, was given to' her with the verbal understanding that her name could be inserted if the loan was not paid in ninety days — thus making the horse her absolute property. Alleging that the loan had not been paid as agreed, she affirmatively pleaded and prayed for foreclosure of her claim as a lien on the horse, adding J. C. Trice as a necessary party litigant.
We quote in pertinent part the chancellor’s well composed decree:
“There appears to be no controversy to any material fact between Harden and Austin. Mrs. Austin holds a verbal mortgage covering a thoroughbred mare quarter horse named Lee’s Pride, which together with another horse and trailer secures a $2,000.00 indebtedness owed to Nell Austin by J. C. Trice. Trice bought the mare from one W. L. Lee and received from Lee a transfer report and bill of sale. This instrument was delivered to Mrs. Austin still in blank by Mr. Trice when he borrowed $2,000.00 from Mrs. Austin. No record of any transfer was submitted to the American Quarter Horse Association. Mr. Trice maintained possession of the horse and exercised all evidence of ownership. No agreement concerning the loan or mortgage was ever reduced *753 to writing and naturally none was recorded.
“Mr. Harden bought the mare without notice, actual or implied, of the mortgage. I feel that he used due diligence in determining true ownership which was reported from both Mr. Lee, the registered owner, and Mr. Trice, that Mr. Trice was the owner. Trice had possession. Mr. Harden was therefore a bona fide purchaser for value without notice. Under the provisions of Chapter 698 and 699, Florida Stat-tutes, he took title to the horse free and clear of any encumbrance of Mrs. Austin. The prayer of Mrs. Austin to foreclose on the mare, is therefore denied and the Court hereby deZcares that title to the mare quarter horse named Lee’s Pride, is vested in George C. Harden, Jr., free and clear of all encumbrances of Nell Austin.
“In connection with the registration certificate itself, the Court is of the opinion that Mrs. Austin’s failure to put anyone on notice of her interest, though done in the finest tradition that a man’s word is sufficient, nevertheless should estop her in claiming any such interest in the certificate when there is a bona fide purchaser without notice of the horse. I therefore find, and direct, that she should turn the registration certificate over to the Plaintiff.
“This order is without prejudice to any claim Mrs. Austin may have against J. C. Trice.”
The defendant urges on appeal that title to a registered quarter horse is not transferable by mere delivery or by an ordinary bill of sale and that, unless registration is abandoned, a valid transfer can be effected only by a transfer report and bill of sale recorded with the American Quarter Horse Association. This organization, as previously noted, is headquartered in Amarillo, Texas. From the foregoing hypothesis, the defendant contends that the plaintiff was placed on notice when J. C. Trice gave an excuse for not passing the transfer report and bill of sale at the time of plaintiff’s purchase. These arguments are plausible but unavailing in view of all the facts and the applicable recording statutes.
Under Fla.Stat. § 699.07, F.S.A.[1] instruments relating to livestock must be recorded in order to constitute constructive notice. A horse comes within the livestock classification. Cf. Linick v. Lamm, Fla.App. 1962, 143 So.2d 551. Under Fla.Stat. § 698.01, F.S.A.,[2] no chattel mortgage is valid as against a subsequent bona fide purchaser for value without actual notice unless appropriately recorded.
We conclude that the decree under assault determined correctly that the plaintiff had neither actual nor constructive notice of defendant’s claim. Absence of recordation precluded constructive notice; and as for actual notice, a brief résumé of the facts shows there was none. The defendant was an undisclosed party who was never in the chain of possession. W. L. Lee confirmed his sale to J. C. Trice who, as owner in long and continuous possession, sold directly to the plaintiff who had searched the records and made other inquiry. Despite Trice’s excuse for not making immediate delivery *754 of the registration certificate, there was no showing that the plaintiff had reason to suspect the existence of any outstanding interest or any claim on the part of Nell Austin.
Having failed to bring herself within the protection of the recording statutes, the defendant can not successfully ■challenge the plaintiff’s title or subject it to her claim of lien. Directing delivery of the registration certificate was properly incident to the other relief granted the plaintiff, and the defendant’s claim against J. C. Trice remains unprejudiced by the decree.
Affirmed.
KANNER, Acting C. J., and ALLEN, J., concur.

. “Where instruments relating to livestock must be recorded in order to constitute notice. — All bills of sale, conditional bills of sale, retain title contracts, contracts, mortgages, liens and leases upon livestock to be of any force and effect against any bona fide purchaser or party acquiring an interest in or a lien upon said livestock, without actual knowledge of outstanding claims against same, must be recorded and indexed in the county where said livestock is located or in the county from which said livestock has just recently been removed.”

. “To be recorded. — No chattel mortgage shall be valid or effectual against creditors or subsequent purchasers for a valuable consideration and without notice unless it be recorded, or unless the property included in it be delivered to the mortgagee and continue to remain truly and bona fide in his possession.”